UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALTON JAMES NICKLEBERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:01-CV-1497-G |
| OFFICER RICHARD BILINSKI, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

This action is brought by Alton James Nickleberry ("Nickleberry") against the defendants Officer Richard Bilinski ("Bilinski") and Sergeant David Teel ("Teel"). Following a bench trial on May 3, 2006, the court concludes that judgment should be entered for the defendants.[1]

---

[1] The court sets forth in this memorandum opinion and order its findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a).

I. BACKGROUND[2]

Nickleberry filed this suit pursuant to 42 U.S.C. § 1983 ("§ 1983"), alleging that Bilinski and Teel denied him necessary medical care while Nickleberry was incarcerated in the Dallas County Jail.  *See generally* Plaintiff's Affidavit and Statements of Facts ("Amended Complaint"), *attached to* Letter from Nickleberry dated October 18, 2002 Regarding Amendment of Original Complaint; Trial Transcript at 4, lines 24-25 through Trial Transcript at 5, lines 1-18.  At the time relevant to this case, Bilinski and Teel were officers of the Dallas County Sheriff's Department, assigned to duty in the Dallas County Jail.  Affidavit of Richard Bilinski ("Bilinski Affidavit") at 1, *located in* Appendix in Support of Defendants Bilinski and Teel's Motion for Summary Judgment ("Defendants' Appendix"), as Exhibit 1; Affidavit of David Teel ("Teel Affidavit") at 1, *located in* Defendants' Appendix, as Exhibit 2.

A.  Nickleberry's Version of Events

According to Nickleberry, on or about November 7, 2001, Bilinski and Teel entered his cell block as Nickleberry was preparing to shower.[3]  Amended Complaint

---

[2] This court's memorandum order of July 5, 2002, granting the motions of the defendants Daniel Johnson and Arleen Martinez for summary judgment and of the defendant James Watson for judgment on the pleadings, contains a detailed discussion of the facts of this case.

[3] During trial, Nickleberry claimed the incident at issue occurred on October 7, 2001.  *See* Trial Transcript at 5, line 20.  Nickleberry also has asserted

at 1. Bilinski and Teel saw Nickleberry remove a wrist brace, *id*, whereupon they ordered everyone in the cell block to retreat to the day room. *Id*. Bilinski and Teel then proceeded to "shake down" or search the cells. *Id*. When Nickleberry returned to his cell, he noticed that his wrist brace was missing. *Id*. Nickleberry informed Bilinski and Teel that the wrist brace was missing and that the brace had been prescribed by a physician. *Id*. Bilinski and Teel, Nickleberry asserts, thought he was lying, *id*., and walked out with the wrist brace. *Id*.

     Bilinski returned to Nickleberry's jail cell two hours later. *Id*. at 1-2. Nickleberry inquired about his wrist brace. *Id*. at 2. Bilinski told him that "it did'nt [sic] matter any more because the brace had alreally [sic] been thrown away and for me to write a grievance and laughed again while closing the door." *Id*.

     While in the cafeteria line later that same day, Nickleberry bumped his wrist on an iron bar, which resulted in a painful injury. *Id*. Thereafter, Nickleberry entered a written request to see medical personnel and wrote a grievance letter. *Id*. Three or four weeks later, x-rays were taken. *Id*. Three weeks thereafter, a physician examined Nickleberry. *Id*. The physician determined that Nickleberry's wrist had been fractured again. *Id*.

---

that the incident occurred on October 24, 2001. See *id.* at 8, lines 3-7.

B.  The Defendants' Version of Events

The defendants' description of the events of October 24, 2001[4] is considerably different from Nickleberry's.  Bilinski and Teel contend that on that date they conducted a shakedown of jail tank 11N4 with other officers.  Bilinski Affidavit at 1-2; Teel Affidavit at 1-2; Trial Transcript at 86, lines 18-22.  During the shakedown, an ace bandage was found under Nickleberry's mattress.  Bilinski Affidavit at 2; Teel Affidavit at 2.  Neither Bilinski nor Teel had ever seen Nickleberry wearing the bandage.  Trial Transcript at 110, lines 7-9; *id.* at 129, lines 17-19; see also *id.* at 110, lines 20-22.  In accordance with Dallas County Sheriff's Department policy, Bilinski confiscated the bandage as contraband.[5]  Trial Transcript at 86, lines 3-7; *id.* at 103, lines 13-14.  Bilinski took the bandage to the nurse's station and asked Nurse Phelps-Sanders what to do with it.  Bilinski Affidavit at 2; Teel Affidavit at 2; Trial Transcript at 86, lines 22-24.  The nurse told Bilinski to discard the bandage as Nickleberry was not using it.  Bilinski Affidavit at 2; Trial Transcript at 111, lines 2-10.  Bilinski filed a report after the incident.  *See* Defendants' Appendix at 8.  Bilinski's supervisor and Nurse Phelps-Sanders filed separate reports.  *See* Defendants' Appendix at 9-10.  In her report, Nurse Phelps-Sanders wrote, in pertinent part:

---

[4]   Nickleberry claims that the events at issue occurred on November 7, 2001, while the defendants maintain that the correct date was October 24, 2001.

[5]   The bandage "could be used for suicide or as a strangulation device. . . ."  Trial Transcript at 129, lines 15-16.

> The Officer brought an old dirty ace wrap to the nurses [sic] station. I was told that it was found during a shakedown. I was also told that no inmate was wearing the ace wrap.
>
> I told the Officer that if no inmate was wearing the wrap it could be discarded.

*Id*. at 10; *see also* Trial Transcript at 76, lines 1-18. Bilinski maintains that had he would have returned the bandage to Nickleberry had Nurse Phelps-Sanders asked him to do so. Bilinski Affidavit at 2; Trial Transcript at 101, lines 22-25; *id*. at 102, lines 1-5. At trial, Nickleberry testified that Nurse Phelps-Sanders told Teel and Bilinski that they could discard the bandage. Trial Transcript at 28, lines 7-20. After Teel and Bilinski discarded the bandage, Nickleberry did not request a new bandage. *Id*. at 78, line 13-25.

Neither Bilinski nor Teel had any other involvement with Nickleberry regarding his medical treatment. Bilinski Affidavit at 2; Teel Affidavit at 2. Bilinski and Teel maintain that if Nickleberry objected to their conduct, Nickleberry could have notified a nurse or another officer or have requested an additional bandage from the medical staff. Bilinski Affidavit at 2; Teel Affidavit at 2.

On January 24, 2003, Bilinski and Teel Qualified moved for summary judgement of Nickleberry's claims against them on the ground that qualified immunity shielded them from liability for civil damages. On May 14, 2003, this court denied summary judgment of all of the plaintiff's claims against the defendants

- 5 -

given the genuine issues of material fact still to be resolved.  On June 11, 2003, the defendants appealed this court's ruling to the United States Court of Appeals for the Fifth Circuit.  On March 25, 2004, the Fifth Circuit affirmed this court's ruling.  On May 3, 2006, this court held a bench trial.

## II.  ANALYSIS

Nickleberry claims that Bilinski and Teel deprived him of his constitutional right to medical care while he was incarcerated in the Dallas County Jail.  The Fifth Circuit has established that the "deliberate indifference" standard applies to prisoner claims involving the denial of medical care under 42 U.S.C. § 1983.  See, *e.g.*, *Hare v. City of Corinth, Miss.*, 74 F. 3d 633, 647-48 (5th Cir. 1996) (en banc).  Under this standard, an episodic act or omission by a governmental employee does not violate an inmate's constitutional right to medical care unless the inmate demonstrates that the employee acted or failed to act with subjective deliberate indifference to his serious medical needs.  *Id*. at 643, 647-48.  The deliberate indifference standard had long been the rule with respect to claims asserted by convicted persons, and *Hare* extended it to pretrial detainees, thereby making it the standard in all claims for denial of medical care.  *Id*. at 643.

"'For an official to act with deliberate indifference, 'the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Harris v. Hegmann*, 198

F.3d 153, 159 (5th Cir. 1999) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Such indifference on the part of a government employee can be evidenced by intentionally denying or delaying access to medical care or by intentionally interfering with the treatment prescribed.  *Harris*, 198 F.3d at 159 (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)).  Additionally, liability requires "more than ordinary lack of due care for the prisoner's interests or safety."  *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  In other words, mere negligence on the part of a governmental employee does not constitute deliberate indifference.  *Wilson v. Seiter*, 501 U.S. 294, 305 (1991).  That is, an "officer must have the subjective intent to cause harm."  *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003) (citing *Wagner v. Bay City,* 227 F.3d 316, 324 (5th Cir. 2000)).

    To prevail on his claim, Nickleberry must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.  *Anderson v. Pasadena Independent School District*, 184 F.3d 439, 443 (5th Cir. 1999); *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (per curiam).  Once properly identified, only the direct acts or omissions of governmental officials will give rise to individual liability under § 1983.  *Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999).

The record does not show that these defendants acted with deliberate indifference towards Nickleberry's medical needs. Even if the court assumes *arguendo* that the defendants' actions were negligent, Nickleberry has not shown that those actions constitute a violation of his constitutional rights. Thus, he has not shown a right to relief.[6] See *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

### III. CONCLUSION

Nickleberry's claims for denial of medical care are not supported by the evidence. Accordingly, judgment will be entered that Nickleberry take nothing on his claims against the defendants.

**SO ORDERED**.

July 24, 2006.

                                                         _____
                                                         A. JOE FISH
                                                         CHIEF JUDGE

---

[6] To the extent that the defendants' version of events differs from Nickleberry's, Nickleberry has not convinced me that his version is the more likely. Thus, he has not sustained his burden of showing facts that entitle him to relief.